We will hear argument next in No. 16-1655. Telos Corporation v. United States. Whenever you're ready, Mr. Harland. Is it Telos or Telos? It's Telos. Thank you, Your Honor. Yes, thank you, Your Honors. May it please the court, Nathaniel Hartland for Telos Corporation plaintiff appellant. The United States military is the most advanced fighting force in the world today, and yet even the United States Army can make mistakes on occasion. This is a case involving such a situation. Unfortunately, this is a case where the Army tried so hard to make sure that a bidder would be able to compete against an incumbent, Telos Corporation, that it accidentally skewed the playing field in the other direction and resulted in a situation where Telos couldn't win. This case is important because if the lower court's decision is allowed to stand, it will make it more difficult for the courts to review executive branch decisions. The decision we're reviewing, it's a denial of a permanent injunction? Is that the decision? It's a denial of our motion for both declaratory and injunctive relief, Your Honor. The court below on page one of its oral decision and also in its order of the same day on February 29th stated that it was resolving both our And by now the transition was made? Yes, Your Honor. Because the voluntary stay lapsed at the end of February or something? Yes, Your Honor. And we have just found out that the court below did deny our motion for an injunction pending appeal several days ago as well. This court will also render, will give executive agencies perverse incentives in the sense that the less they write down about whether somebody deserved a strength or deserved to be downgraded for something, the more easy it will be for them to defend their decisions. Because if an agency says nothing about something, it has nothing to explain. And if the court cannot look behind that and ask that agency, why didn't you give someone credit for this? Why didn't you give Ford Motor Company credit for being able to manufacture a say we're not required to write down why we didn't give somebody credit for something or why we didn't downgrade someone for something. So we don't have to answer that question. The backdrop for this case is a really very thin contemporaneous administrative record. And we understand that this is a FAR Part 8.4 procurement and not a FAR Part 15 procurement. And do you agree that that makes some difference in the amount of explanation that the government needs to give? Yes, we do, Your Honor. How would you phrase that difference? Well, the requirements that are applicable for contemporaneous documents for FAR 8.4 procurements are listed in a provision in regulations 8.405-2D and F. And in those provisions, the agency is not required to give a detailed blow-by-blow analysis of every single issue that it looked at in the contemporaneous record. In a FAR Part 15 procurement, there is more of a requirement to write down more detail about the evaluation contemporaneously. And Your Honor, the Army has taken the position that we are saying the requirements are the same. And I want to be clear that we have never said that. That's not our position. At the end of the day, you need to have us look at specifics and say, here's something the Army decided and didn't give a good enough Here's material that casts a whole lot of doubt on it. I guess my first question is, how are we supposed to talk about this here? Half your brief is in yellow. Well, Your Honor, we don't believe it's necessary because confidentiality doesn't. Yes, Your Honor. In most of the cases, in fact, I believe in all of the cases where material is in yellow, the Army has not substantively denied that that information is correct. The Army's position is that it does not have to provide an explanation. The court below agreed with that and stated that I don't find there's a need for an agency to explain matters that are merely found adequate in a proposal. So that things that TELUS has demonstrated that the agency treated unfairly, to give TELUS credit for significant strength in its proposal and overlook deficiencies or weaknesses in the awardee's proposal. Can I ask this question? Just tell me, it may be completely off or maybe more theoretical, but suppose you had a situation where the service that's being purchased is one that has to meet just the minimum standard is zero to 100. The minimum standard to be acceptable is 99. So there's just not a meaningful difference between acceptable and strong or significantly strong or something like that. Then it seems to me you're not talking about anything significant in terms of explaining why it was 99 rather than 100. Why is that not this case on a service that I gather there's at least some evidence to suggest the minimum standard is very, very high? Yes, Your Honor. The minimum standard here is very high. We've contended that the awardee net centrics did not satisfy that standard. We've also contended that under the evaluation scheme that the agency set up in its solicitation, it had proposed to give people strengths or weaknesses based on certain criteria and said that it would qualitatively rank offerors as being either not just acceptable or unacceptable, but being good or excellent or outstanding or marginal or not acceptable. So the agency set up this scheme where there were multiple tiers, not just acceptable or unacceptable. Our client, who is the incumbent, has over 10 years of performing these exact requirements, was basically treated as if it was a fly-by-night newcomer to the procurement. The agency has not at all attempted to rebut Telos' claim that it has years of successful performance, and Telos does not intend to argue that it deserves this award simply because it's the incumbent. However, because it is the incumbent and because it explained how it is doing the exact same work at the time when the award was made, the agency was not free to simply disregard all of that and treat the newcomer as if it So we would like the court to require the agency to treat the offerors equally, recognizing that Telos truly does have extensive experience and other capabilities that are relevant to this procurement. On the issue of experience in particular, the agency has been all over the place. The agency initially stated, the contracting officer stated to GAO that experience was not part of the technical evaluation with respect to Telos. However, upon being confronted with the fact that the evaluation record did give Netcentrics a significant strength for its experience, the agency changed its tune and stated that what was really at issue was the knowledge and the understanding that experience provided to why Telos' extensive experience didn't deserve at least as much credit as Netcentrics. The court below did not address why Telos' undisputed experience across the full range of the requirements of this procurement didn't deserve some level of credit. And so we believe that there was clearly unfair treatment in that regard. Didn't the selection official at some point on the technical factor make reference to the fact that Telos had some experience with something since the inception of that program? Yes. That sort of lended some credit to the idea that Telos had an advantage here which helped establish a strength? Yes. So I guess what I'm trying to get at is that it appears that the selection official did contemplate the experience that Telos had when evaluating the technical factor. The agency considered it under one of the 48 sub-factors, or excuse me, tasks and sub-tasks. But there were many, many other areas. Telos has experience across the whole spectrum. The agency didn't actually refer to Telos' experience under that particular part of the record, but I can see how the Army would say that it gave Telos at least a little tiny bit of credit under one little area. The issue is that Telos has undisputed successful experience across the full range of these 48 tasks and sub-tasks. And so there's been no reason provided by the agency as to why Telos didn't get credit for its other experience. Instead, the newcomer was given a significant strength, which helped to bump it up to a higher evaluation rating than Telos, for having someone who could help the newcomer's team quote, come up to speed. So even though the agency conceded that the newcomer didn't have experience that made it already up to speed, it still gave Netcentrics credit for its experience as a significant strength under the technical factor. Another issue with the experience in this case is that the agency specifically said in the RFQ that it would evaluate parties' proposed personnel for the caliber and depth of their experience. However, this is under the management factors, Your Honor. However, when it came to the evaluation of Telos' management proposal, Telos received not a single strength for any of its experienced key personnel who had been performing the agency for years. That, despite the fact that the procurement said that the agency's emphasis was uninterrupted performance and 24-7, 365 performance. The agency made it very clear it needed top-notch personnel who were experts in this area, and Telos provided them, but received zero credit under the management factor. The Court's decision below does not address why Telos did not receive any credit for its experience under the management factor. You're into your rebuttal time now. Oh, thank you, Your Honor. Thank you. Ms. Neosy, is it? Yes. May it please the Court. The record shows that the agency carefully reviewed all of the proposals and that what Telos is asking for the Court to do is to second-guess all of the agency's discretionary determinations. The trial court properly applied the standard of review here, reviewed the record to determine if there was a coherent and rational explanation for the agency's award. The trial court didn't pay lip service to that, nor is the government asking this Court to just trust the agency on the evaluation. The trial court carefully reviewed to see if the agency considered relevant criteria, whether there were any inconsistent evaluations between the two offerors, looked to see whether the agency applied any unstated evaluation criteria, and concluded that there was nothing like that here. The record supports that. This is a FAR Part 8 procurement. It's a simplified acquisition, but the source selection decision was 10 pages long. There are two memos to the file documenting a discussion between the source selection official and the evaluation board, where the source selection official asked the evaluation board to go back and be sure that it was describing proposal features that met the definitions for a strength or a significant strength. And then you had three rounds of evaluation board reports. So the record clearly supports the finding that the agency thoroughly reviewed the proposals and reached rational determinations that TELOS simply wants this Court to second guess and to sit, frankly, as a source selection authority to review pages and pages of its proposal and make essentially de novo determinations about whether TELOS deserves a strength or a significant strength. What if we were to conclude that there were some arguments or evidence positions raised by TELOS that we didn't see addressed in the selection official's decision or the underlying evaluation board's decision? And then so then we conclude, okay, it does look like the selection official did consider a lot of things, but maybe just didn't consider everything. Or at least maybe she said she did, but then we can't really see that she didn't do all her homework in terms of evaluating every little argument that was made. And what do we do under those circumstances? Well, the Court's role is to look and see if, and this is what the trial court did, was to look and see if you can discern what the rationale was for the agency's decision. This is a FAR Part 8 procurement, so the source selection official and the evaluation board doesn't need to document the evaluation the way you would in a FAR Part 15 procurement. And she absolutely complied with the requirements of FAR Part 8. You see that she set out in the source selection decision, which is at pages 2279 of the appendix, she sets out all of the evaluation criteria, she describes the features of the proposals that she determines are distinguishing features between the different proposals. The fact that the agency doesn't document every feature and whether it's a strength or not a strength doesn't make the source selection decision irrational. And the level of detail that TELOS wants the agency to put into this evaluation isn't even required by FAR Part 15. FAR Part 15.305 requires the selection official or the evaluation to include descriptions of features that are deficiencies, weaknesses, strengths, or significant strengths. But even FAR Part 15 doesn't require an agency to describe why a particular feature isn't a strength or is a strength. And so, for example, when TELOS' counsel is referring to the fact that there's no explanation in the record for why it didn't get more strengths for its experience, what we can tell from the record is that the agency reviewed the technical and management proposals. And when it found something that warranted a strength, saw an experience that justified giving a strength, it mentioned that. It described it in the evaluation reports, which were then referenced by the source selection decision. And so, even if there isn't a one document that sort of synthesizes all the information that TELOS would like to have in the record and described in the record, that doesn't make the agency's decision irrational. As the Supreme Court said in Motor Vehicle Manufacturers Association, the courts will uphold a decision of even less than ideal clarity, so long as the agency's path is reasonably discernible. And that's exactly what the trial court did here. Can I ask, I guess, this version of the question? Ultimately, what the government official making the choice is doing is a comparative task. Why should that not require that on a particular required element of the qualification that the evaluating official may show a comparative assessment, as opposed to saying, okay, we found strengths on management or whatever it is. We said strength. And separately, did the same for the TELOS. But we never did anything, not we never, but shouldn't the army in this case have to make a comparative assessment, or is that wrong? Not just at the bottom line, but on particular components of the analysis. The agency's requirement is to evaluate the proposals against the stated criteria in the RFQ. The agency, for example, where TELOS talks about staffing, the agency never said that staffing is going to be evaluated based upon what TELOS's proposal is. So there's nothing in the RFQ or the FAR that requires the agencies in evaluating proposal features, determining whether they have strengths or significant strengths, they don't have to evaluate that by comparing one proposal to another proposal. But what you do see here in this... How do we know, for example, if the evaluator says TELOS is strong on staffing, and then no particular strength rating for TELOS, how do we know whether the evaluator has applied the same yardstick, wherever the yardstick comes from, or instead, whether the evaluator has said that centric is strong on staffing because, for reason X, and then TELOS is not strong on staffing for a completely different reason? Well, what the courts will do is look to see if the same criteria is applied... For example, if the proposals have similar features, does the evaluation have reached similar conclusions about the features? But here, where the record demonstrates that, or the record indicates that the evaluation report, the evaluation board, would review the various features, and then when they saw strength, a distinguishing feature, that's what they discussed. And so you can tell that the board reviewed... The evaluation board and the source selection official reviewed the proposals because there's detail about the features that each of the offerors presented that the evaluation board found to have strengths or significant strengths. So you look down into the details of what the agency describes as the strength or significant strength, and unless there's a situation, as the child has recognized, where you have comparable proposal features, but they're being treated unequally, then there's no basis to second guess what the agency's evaluation is because you don't have to compare. And I guess, do any of Telos's arguments here, which are numerous and somewhat dense, but ultimately this is about specifics, not about the general proposition about which doesn't advance the inquiry very much, do they make any point of the sort that you just described? Namely, the evaluator said net-centric has a strength or a significant strength because it has this, and their brief says, we have the same thing, and yet we didn't get it. We need an explanation. Not on that... Not on specific features. What Telos does argue is that, and I think we think incorrectly, is that the agency gave net-centrics a strength for having experience under the technical factor. A high level of generality. Yes. And that Telos has as much experience and deserves a strength as well. But when you look at the evaluation report, the agency was not evaluating under the technical factor the proposals strictly based on who has more experience or who is experienced. At page 2072 of the record, the evaluation report indicates that the reference to net-centrics experience was cited by the board to demonstrate that net-centrics had deep understanding or significant understanding and an excellent understanding of the requirements. And so they're not judging experience per se. And there's a parallel, as a trial court found, a parallel situation also in the technical evaluations where the board says, the evaluation board says, and Telos has expert techniques and participated in development. Now, to be sure, it doesn't use the word experience, but it's the same concept. And so the trial court directly addressed the situations where Telos was claiming that there was some kind of unequal treatment. And instead of relying on sort of just the broad word experience, the trial court dug into the record and said, that's not really what this evaluation report is saying. That's the only time that Telos says that it was treated unequally and provides something that's close to a specific comparison. Under the experience heading. Under the experience, exactly. What about the transition plan under the management factor? Why wouldn't Telos get the most superior rating for the transition plan given that they would have no transition as the incumbent compared to any other would-be supplier that would have to somehow transition in and then work with the incumbent to transition out? The transition factor was not just about transitioning in. The evaluation factor, which is at 1601 of the record, and then the evaluation criteria at 1614, indicate that the transition factor dealt with transition in, transition out, and generally how the offerors are going to deal with the transfer of knowledge and the risk associated with transferring knowledge from one contractor to another. The selection official didn't seem to comment at all or address Telos' apparent structural advantage of not having to deal with any of those things. The RFQ, this RFQ was combining two contracts into one. As Telos itself recognized in its management plan at page 1967 of the record, Telos recognized that there were going to be new performance work statement requirements and that it needed to eliminate redundancy. First of all, the factor is not just about transitioning in. It's broader than that. Even with Telos having been the incumbent, there's necessarily going to be changes. The last thing I just want to point out is that the source selection decision, page 2285 of the record, describes this factor and explains that Telos, in finding that Telos' proposal was adequate, says that Telos incorporated phases of personnel with proposed staffing, demonstrated an understanding and concept of working with the government in preparing transition activities. I cite that because that demonstrates the breadth of the transition factor, where Telos is only relying on, in its brief, its transition in and that it's the incumbent. The factor is much broader than that, which means that the agency was not irrational in determining that Telos and Netcentrics were entitled to the same rating for the transition factor. Thank you. May it please the court, Jeremy Dutra on behalf of the intervener, Netcentrics. I won't repeat all the arguments that have been made. I'm going to focus on some specific issues that were unique to the criticisms of Netcentrics and the first one dealing with the management sub-factor of staffing. You go back to the instructions to offerers and the RFQ instructed contractors to describe their staffing plan in support of each of the five functional areas in the Florence Work Statement. You see that Netcentrics and the court down below, the court claims noted this, that Netcentrics staffing proposal, in fact, did that. It provided a methodology and a rationale for each of the five functional areas in the 1881. The court was correct down below that the agency provided the required consideration. They evaluated as reflected in the evaluation board memoranda. This is on 2077. They evaluated Netcentrics proposal against the performance work statement, against the instructions that instructed offerers how to respond and how they would be evaluated. They looked at each of the management sub-factors including staffing separately and the agency found that Netcentrics had the adequate labor categories to satisfy the program requirements and also noted that Netcentrics proposal meets the task requirements and displays an understanding of the requirements outlined within the performance work statement. So the criticism that the agency did not review and provide the requisite evaluation of Netcentrics at the task level, that criticism just simply misses the mark as reflected in the record itself. In the agency's evaluation, notwithstanding what TELUS argues was not conclusory, you see in the evaluation board at 2078 and at the source selection decision at 2286 that Netcentrics proposed key personnel that showed adequate experience and certification to meet the mandates required to the performance work statement. Nor was the evaluation perfunctory. You see at 2096 where the evaluation board went through in detail on the staffing and noted that Netcentrics proposes to utilize lessons learned with their past experience in providing support on this contract vehicle and in its customers and providing a more within all areas, reducing staff size, doing a bottoms up analysis. So the agency is reflected in the record, actually did this evaluation and did exactly what 8.405-2D requires. I understand that you believe the selection official said enough, did enough, showed enough to justify the decision and the categorization of all these different factors for these suppliers, but where do you think the line is? What would not be enough? Obviously if they just said for all these different factors, adequate, adequate, superior, adequate, and without any further explanation, that seems like it wouldn't be enough. But what would change with this opinion and then cause a vacater? If all the agency did was say Netcentrics wins, they're the best award, I think that would cause a problem here. But again, under FAR Part 8, what the agency did was here's the evaluation criteria that we've outlined in our RFQ and they noted for each of the evaluations and they documented it, we evaluated this proposal and each of these sub-factors against those requirements in the RFQ. And as the Court of Claims recognized, you look at the record before the agency, was there a rational explanation or was there a rational basis for the conclusion that the agency reached, noting that the agency complied with the evaluation criteria that they outlined in the RFQ? And the court correctly found yes. Here the proposals that the agency cited to, in fact, included all of this detail. It included the methodology and a rationale. And the agency itself here, in the evaluation board memoranda, noted the details from the offer awards, including Netcentrics proposal, that just shows that the agency didn't just do a perfunctory analysis and reach a conclusion, but actually looked at the requirements in the performance work statement, looked at the requirements in the RFQ, and looked at the proposal and evaluated each of those proposals against the requirements set forth in the RFQ. Your time has run out. Thank you, Your Honors. I appreciate it. Four minutes. Four minutes. Thank you. Your Honors, I would like to address to several things that my colleagues have said. One is that TELUS is allegedly saying that agencies have to write down, at the time when they're doing an evaluation, all the reasons why they didn't award a strength to someone or didn't downgrade someone for something. And I'd like to just be crystal clear, as I think we were in our briefs, that we are not saying that agencies have to do that. Rather, along the lines of the case that we cite to Domenico Garuffi, where the court found that a protester had raised sufficient grounds to ask an agency more questions about why it had done what it had done, or similar to the Overton Park Supreme Court case, where the court held that an agency can, if the record is not sufficient for judicial review, be instructed to provide additional reasons to justify its decision. We believe that we have abundantly carried that initial burden of showing that the agency acted irrationally and unfairly, and that in light of those circumstances, the agency should have provided an explanation for its conduct. The agency was free to supplement the record below, and indeed, it actually did supplement the record to some degree, providing a contracting officer statement that was provided at the GAO to explain a few things. So the agency recognizes it has that freedom to provide these explanations. However, the agency chose not to submit a more detailed explanation below about the issues that are now before the court, and we believe that the court should not defer to silence as an explanation from the agency, where we have carried that initial burden of showing that the... But ultimately, there's sort of a judgment call here, like an algebra class teacher says, don't just give me the answer, show your work, and there's a judgment. Have you shown your work without doing every single step or given enough to indicate what the basis of the answer is? Yes, we believe that that judgment call should fall very much in our favor, particularly with the fact that the agency has been so inconsistent about the way it was going to evaluate experience. We believe that that is a very clear area in which we have carried our burden. Also, the experience of the awardee's expert or alleged expert in the AMHS software platform, we believe that we have provided abundant details to show that their expert did not have the required experience or the documented experience that was required for a person who didn't have a certain academic degree. The agency has not submitted any rebuttal of the detailed statements in the declaration submitted by TELOS in the record that shows why that person who's well-known to TELOS does not have the qualifications needed. The agency and the eccentrics were free to explain themselves and explain why TELOS was wrong about that, but have chosen not to do so in detail, submitting only a conclusory affidavit stating by the person involved that I meet the requirements with no detail about the specific issues TELOS faced. Your Honor, I would like to also just mention that the court below erred in finding that the agency evaluated staffing at the task level. The agency itself admitted on page 254 of the record that it only evaluated staffing generally and stated in another place that whether or not it had not needed to evaluate staffing at the task level. We believe that's clearly contrary to law. Finally, 8.405-2F8 requires that even in FAR Part 8 procurements, an agency must provide enough detail to show that it treated offerors fairly. Here, we believe that the agency has failed to provide that level of documentation required by 8.405-2F8, which refers to another paragraph in that section. Thank you, Your Honor. Thank you very much. Thanks to all counsel and cases submitted.